**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice* to be filed)
Jason A. Uris (*pro hac vice* to be filed)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*juris@kaplanfox.com*

*Attorneys for Plaintiff Harsh Patel*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARSH PATEL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SNOWFLAKE INC., FRANK SLOOTMAN, and MICHAEL P. SCARPELLI,<br><br>Defendants. | Case No. 3:26-cv-1613<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Harsh Patel ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation by Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge. The investigation by counsel included, among other things, a review of Snowflake Inc.'s ("Snowflake" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, public conference calls, media and news reports about the Company, and publicly available trading data relating to the price and volume of Snowflake securities.

**INTRODUCTION**

1. This action is a securities action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, brought by Plaintiff on behalf of a class of all persons and entities who purchased Snowflake Class A common stock during the period June 27, 2023 through the close of the market on February 28, 2024 (4:00 p.m. ET), inclusive (the "Class Period").

2. Snowflake is a software company that provides cloud data storage that enables customers to consolidate data onto data-driven applications and share data for the purpose of running analytics and other processes.

3. The Company utilizes a consumption model, rather than the more traditional license model common in the software industry, whereby Snowflake sells its services and products in units called "credits", which must be used, or "consumed" by customers over a contractually defined period of time. Snowflake recognizes revenue as credits are consumed.

4. During the Class Period, Defendants repeatedly made positive statements about the state of its business, including positive statements about customer usage of, and new developments for, its products. At the same time, Defendants (as defined herein) failed to disclose that: (1) product efficiency gains, Iceberg Tables and tiered storage pricing were expected to have a material

negative impact on consumption and revenues[1], and (2) as a result, Defendants' positive statements about consumption patterns, revenues, and demand for Snowflake products lacked a reasonable basis.

5.   On February 28, 2024, Snowflake shocked investors when, after the market closed, the Company issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the quarter ended January 31, 2024 and full fiscal year 2024. On that same day, during a conference call with investors and analysts after the disclosure of Snowflake's financial results, Defendant Scarpelli stated that they were forecasting increased revenue headwinds associated with product efficiency gains, tiered storage pricing and the expectation that some of their customers will leverage Iceberg Tables for their storage.

6.   On this news, the price of Snowflake's Class A common stock declined $41.72, or 18.14%, from a closing price of $230.00 per share on February 28, 2024, to close at $188.28 per share on February 29, 2024.

7.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's Class A common stock, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.   The federal law claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

9.   This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

10.   Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 27 U.S.C. § 1391(b) and (c).  At all relevant times, Snowflake conducted substantial business in this District and many of the acts and practices complained of herein

---

[1] An Iceberg Table is an open-source table format for large datasets that allow customers to store data in their own cloud, rather than in Snowflake's, thereby reducing storage and consumption costs. Through tiered storage pricing, Snowflake offered discounted storage costs based on volume.

occurred in substantial part in this District. While in May 2021 Snowflake announced its transition to a company with "a globally distributed workforce and no corporate headquarters," at all relevant times the Company continued to operate out of its former corporate headquarters located in this District. In addition, certain Defendants reside in this District.

11. In connection with the material misrepresentations of facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of national securities exchanges.

**PARTIES**

12. Plaintiff purchased Snowflake common stock as detailed in the attached Certification and was damaged thereby.

13. Defendant Snowflake was founded in San Mateo, California, where it maintained its corporate headquarters until May 2021, when it announced its transition to a company with "a globally distributed workforce and no corporate headquarters." Snowflake is incorporated in Delaware and its principal executive offices are located at Suite 3A, 106 East Babcock Street, Bozeman, MT 59715. The Company's common stock is listed on the New York Stock Exchange ("NYSE") under the ticker symbol "SNOW."

14. Defendant Frank Slootman ("Slootman") served as the Company's Chief Executive Officer from April 26, 2019 until February 27, 2024. Slootman also served as the Chairman of Snowflake's Board of Directors from December 2019 until he resigned in February 2024.

15. Defendant Michael P. Scarpelli ("Scarpelli") served as the Company's Chief Financial Officer ("CFO") from April 29, 2019 until February 25, 2025, when he announced his retirement.

16. Defendants Slootman and Scarpelli are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Snowflake's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and

press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made to investors regarding consumption and revenues were then materially false and/or misleading.

17. Snowflake and the Individual Defendants are referred to collectively as "Defendants".

18. Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, services, competition, and present and future business prospects, as alleged herein. In addition, the Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

19. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance, participated in conference calls with investors during which false and misleading statements were made, and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

**CLASS ACTION ALLEGATIONS**

20. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased Snowflake common stock during the Class Period.

21. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States. As of March 15, 2024, Snowflake had over 334 million shares of common stock outstanding, which were actively traded on the NYSE in an efficient market.

22. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein. Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff. Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

23. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

(b) whether Defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC;

(c) whether Defendants participated directly or indirectly in the course of conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and the proper measure of such damages.

## FALSE AND MISLEADING STATEMENTS

25.    The Class Period begins on June 27, 2023. On that date, the Company and key executives hosted an Investor Day presentation with investors and analysts. During the presentation, Defendant Scarpelli stated:

> In terms of what we've commented on in the call was literally the month of April kind of starting about day 10 or whatever is pretty much flat week-over-week growth in revenue. ***But coming into May and into June, consumption is back where we'd expect it to be.*** So we look at it on a daily basis, week-over-week growth.

26.    During the presentation, Defendant Scarpelli stated the following regarding Iceberg Tables and its potential to increase workloads on Snowflake's products:

> all the work that we're doing in terms of workload enablement is aimed at that, that is full alignment with our business model, right? ***So that's why we're investing so many resources in not just being able to do data warehousing, but expanding through Iceberg OpenTable formats. It really opens up the data lake opportunity, transaction processing, global search, cybersecurity, all the different categories of workloads is incredibly important through this strategy succeeding.***

27.    During the presentation, Defendant Scarpelli stated the following regarding the Company's long-standing target of $10 billion in product revenue by 2029:

> FY '29 targets. ***We still feel very confident that we will reach $10 billion in revenue and product revenue in 2029.***

28.    The statements referenced above were materially false and/or misleading because at the time Defendants made these representations, (1) product efficiency gains, Iceberg Tables and tiered storage pricing were expected to have a material negative impact on consumption and revenues, and (2) the headwinds caused by product efficiency gains, Iceberg Tables and tiered storage pricing put the Company's ability to reach $10 billion in revenue and product revenue in 2029 in doubt. As a result, Defendants' positive statements about consumption, revenues, and product developments lacked a reasonable basis.

29. During the presentation, Defendant Slootman stated the following regarding rumors of his impending resignation:

> My most important thing today is to tell you that ***I'm still here***. And I just stepped up on the podium, also stepping down. ***So I just want to make sure you heard that loud and clear***. It's always amazing how these things seem to air on the first day of our conference when our Board member, Mark McLaughlin and myself and the company sort of [indiscernible] ***denied the rumors***. That's the world we live in. I hope you had an opportunity to hear our session with Jensen last night, which I think was super cool.

30. The statements in the preceding paragraph were materially false and/or misleading, and failed to disclose material adverse facts about the Company at the time they were made, because at the time Defendants made these representations, Slootman's resignation was in fact impending. Indeed, Slootman actually resigned just eight months after strenuously denying rumors about his resignation.

31. On August 23, 2023, the Company issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the second fiscal quarter of 2024. On that same day, during a conference call with investors and analysts after the disclosure of Snowflake's financial results, Defendant Scarpelli stated the following regarding consumption:

> I think it is easing a little bit at the top level in terms of approvals for customers and they're willing to commit. But it takes time to convert that to consumption. ***With that said, consumption is good***. It was really good today as an example but it's only one data point. It's – we want to see more days of that before we think the – we're into a real recovery. ***I think stabilization is the right term. We're not seeing customers reduce their consumption right now.***

32. During the same conference call, in response to a question from an analyst regarding consumption and whether growth would start to reaccelerate, Defendant Scarpelli reassured investors regarding Snowflake's revenue growth rate and upcoming product developments:

> **[Analyst]:** ***And then lastly for Mike on consumption***, one follow-up. The implied Q4 product growth is, I think, 26% at the midpoint. I know there's a delta between signing growth and consumption. Exiting this year, do you think product growth stabilizes in the mid-20% range, maybe starts to reaccelerate next year? Or is it just too early to tell?
>
> **Defendant Scarpelli:** Let us finish Q3, and then we'll guide to, and I'll see how next year is looking. ***But I do anticipate – there's a lot of new things coming out next year that we think are going to have a very positive impact on our consumption*** from -- remember, we have Streamlit goes into GA, Unistore towards

the end of this year on our public preview. We have Containerized Services next year. ***There's a number of things that are happening that are all going to have a positive impact on our revenue growth rate next year.*** So stay tuned for that.

33. On November 29, 2023, the Company issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the third fiscal quarter of 2024. On that same day, during a conference call with investors and analysts after the disclosure of Snowflake's financial results, Defendant Scarpelli stated the following regarding consumption:

> ***In Q3, we saw strong consumption from a broad base of customers.*** Our performance was evenly split between large and small accounts. ***Our largest customer stabilized as expected. Migrations drove growth in Q3.*** Our 2 fastest-growing customers who are both migrating workloads from a legacy vendor. One of these accounts is in their second year on the platform, the other in their eighth year on the platform. We added 4 customers with more than $5 million and 2 customers with more than $10 million in trailing 12-month product revenue in the quarter.

34. The statements referenced above were materially false and/or misleading because at the time Defendants made these representations, (1) product efficiency gains, Iceberg Tables and tiered storage pricing were expected to have a material negative impact on consumption and revenues, and (2) the headwinds caused by product efficiency gains, Iceberg Tables and tiered storage pricing put the Company's ability to reach $10 billion in revenue and product revenue in 2029 in doubt. As a result, Defendants' positive statements about consumption, revenues, and product developments lacked a reasonable basis.

## THE TRUTH BEGINS TO EMERGE

35. On February 28, 2024, after the market closed, Snowflake issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the fourth fiscal quarter and full year 2024, provided guidance, and conducted a conference call with investors and analysts. Defendants shocked investors by disclosing that consumption trends and anticipated revenue headwinds associated with product efficiency gains, Iceberg Tables and tiered storage pricing had impacted their guidance.

36. On the February 28, 2024 conference call with investors and analysts, Defendant Scarpelli revealed that "***[c]onsumption trends have improved since the ending of last year, but have not returned to pre-FY '24 patterns.*** We have evolved our forecasting process to be more

receptive to recent trends. For that reason, our guidance assumes similar customer behavior to fiscal 2024. ***We are forecasting increased revenue headwinds associated with product efficiency gains, tiered storage pricing and the expectation that some of our customers will leverage Iceberg Tables for their storage.***"

37. On that same day, in response to an analyst question trying to understand why Defendants were guiding consumption per customer to be slower than the previous year, Defendant Scarpelli explained that in addition to tiered storage pricing and Iceberg Tables, new performance enhancements, such as "the arm chip in the Azure" (the Microsoft Azure Cobalt 100 chip) were expected to have an impact:

> **Analyst:** And then, Mike, if I just look at the guide on a per customer basis, it does look like consumption per customer could be slower this year than last year. What's the delta there? Is the primary delta the assumption that tiered storage pricing and Iceberg will put more pressure on consumption growth? Is that the primary delta? Or is there something else I'm missing?
>
> **Defendant Scarpelli:** No. There's a lot of new performance enhancements being rolled out on our software this year that are going to have an impact. There's also -- well, ***I'll tell you, but I really don't want to because I know you're going to ask a lot of questions. We're also rolling out the arm chip in the Azure.*** It's not as big as AWS' impact. That will impact that as well, too. ***And clearly, we do expect customers will begin to adopt iceberg table format***.

38. On the same call, Scarpelli further stated that "[t]hese changes in our assumptions impact our long-term guidance" and provided full fiscal year 2025 product revenue guidance of approximately $3.25 billion, representing 22% year-over-year growth.

39. As a result, Defendants also withdrew their long-standing $10 billion 2029 product revenue target and lowered FY '25 guidance to 22% year-over-year growth, drastically below the market's expectation of 30%: "These changes in our assumptions impact our long-term guidance. Internally, ***we continue to march towards $10 billion in product revenue. Externally, we will not manage expectations to our previous targets until we have more data.*** We are focused on executing in FY '24 to ensure long-term durable growth."

40. On that same day, Defendant Scarpelli further described the expected headwinds and admitted that they had already begun to see the impacts as early as Q4 2024:

It's about a 6.2%, 6.3% impact this year [from product efficiency gains]. And -- but coupled with that, too, in the revenue, *we rolled out in Q4 tiered storage pricing. So the amount of revenue associated with storage is coming down.* *But on top of that, we do expect a number of our large customers are going to adopt Iceberg formats and move their data out of Snowflake where we lose that storage revenue and also the compute revenue associated with moving that data into Snowflake.* We do expect, though, there'll be more workloads that will move to us, but until we see that incremental revenue on workloads, we're not going to forecast that. I will say, last year, we saw a 62% increase in the number of jobs running on Snowflake year-over-year with a corresponding 33% increase in revenue. And that's because we continue to show our customers that we become cheaper and cheaper to them every year. And when we do that, it opens up new workload opportunities for us, and we'll continue to do that.

41. Moreover, Scarpelli went on to explain their expectation that many of their large customers were going to adopt Iceberg Tables:

**Analyst:** I guess, first question, I just wanted to ask on your guide for the full year fiscal '25. *I think you assumed a number of large customers going to adopt Iceberg Table. So some expectation on data moving out of Snowflake losing some storage revenue and some compute revenue there.* Can you just double-click on that why some of the existing large customers are going to choose Iceberg Table rather than their original?

**Defendant Scarpelli:** *A lot of big customers want to have open file formats to give them the options. And by the way, this is not necessarily customers moving all of their storage out of Snowflake, but a lot of the growth in their storage will be put into Iceberg Tables is what we think is going to happen. So you're just not going to see the growth associated with the storage and many of those customers. As a reminder, about 10% to 11% of our overall revenue is associated with storage*.

42. Further, in response to an analyst question regarding "the potential headwinds from some of your larger customers adopting or moving data to Iceberg" and what they've "seen thus far as far as customers' behavior" as well as the rollout of tiered storage, Scarpelli responded that "Iceberg is not GA yet . . . *[but] [i]t is what we are expecting*." He further stated that "*I know the tiered -- the new tiered storage pricing that we're seeing that today.* And I'll let Christian add some to that as well, too." Christian Kleinerman ("Kleinerman"), Snowflake's SVP of Product, went on to explain that many of their large customers had in fact informed them of their plans to adopt Iceberg:

*Yes. I would add that for many of our large customers, we have been in touch on their plans for adoption on Iceberg. So some of what you see in our guidance has factored in those intentions*.

43. On the earnings call, analysts continued to voice their surprise that, contrary to their Class Period statements touting stabilizing growth and product enhancements that would be *a tailwind* to product revenue, Defendants were now suddenly modeling sharp deceleration:

> **Analyst:** Mike, ***most other cloud consumption vendors are talking about stabilizing growth. You guys are still modeling pretty sharp deceleration over the next year. So this certainly sticks out and may bring about questions on maybe company-specific challenges. So first, are there any notable customer or workload losses that could be weighing on growth this year?*** And generally, how are you feeling about sales productivity and competitive win rates in the current environment?
>
> **Defendant Scarpelli:** Absolutely no big competitive losses or workloads moving up that I'm aware of. ***This is all related to our model where a lot of the performance improvements that we have in our software go directly to the customer***. And that's why I was pointing out, you saw there was a 62% year-over-year growth in jobs on a daily basis run on Snowflake versus only a 33% revenue growth. And we know there's a lot of performance improvements coming into play this year, ***coupled with Iceberg, coupled with tiered storage pricing that we rolled out***. And I was able to roll out the tiered storage pricing because we were getting much better pricing out of the cloud vendors to us.

44. On February 28, 2024, after the market closed, Snowflake also issued a press release and filed a report with the SEC on Form 8-K that disclosed that effective February 27, 2024, Frank Slootman retired as Chief Executive Officer of Snowflake Inc.

45. On February 29, 2024, the price of Snowflake's common stock declined $41.72, or 18.14%, from a closing price of $230.00 per share on February 28, 2023 to close at $188.28 per share on February 29, 2024.

46. Additionally, during a presentation on March 5, 2024, in response to an analyst question regarding tiered storage pricing, Scarpelli admitted that Defendants had actually begun rolling out tiered storage pricing in Q3 '24 and that he was comfortable doing so ***because he knew at that time that the same customers that would benefit from tiered storage pricing wanted to adopt Iceberg Tables***:

> **Analyst:** . . . tiered storage is one that I struggle with a little bit more to understand the impact. I don't know where our customers are today in terms of what tier and where they could potentially go to.
>
> **Defendant Scarpelli:** Yes. So historically, we have discounted a few of our very large customers in storage. We've renegotiated over the last few years our pricing with AWS, Google and Azure, such that we had a fair bit of margin in storage. That was never our intent to have rolled out what we call tiered storage pricing. It's only impacting our biggest customers. ***You have to spend a minimum of $1.2 million, I***

*think, a year to get there. So all of our big customers have this now.* And the more you commit, the bigger the discount on storage you can get. *And you're getting the full impact of that in Q1. It started a little bit in Q3 and more towards the end of Q4 when customers sign contracts. You're going to get the full benefit or impact of that this year, and that's factored in the guidance.*

**Analyst:** Got it. So it's kind of like a volume discounting methodology for the largest customer.

**Defendant Scarpelli:** Yes. *I didn't see that much downside in doing it because most of those big customers are ones over time that want to go to Iceberg tables anyway.*

47.     Also during that presentation, Scarpelli acknowledged, as Kleinerman did on February 28, 2024, that "*I do think some of our larger customers, because they've told us they want to, will move to open-tile formats in Iceberg. That will take storage out of Snowflake.*"

## LOSS CAUSATION/ECONOMIC LOSS

48.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Snowflake's stock price and operated as a fraud or deceit on Class Period purchasers of Snowflake stock by misrepresenting Snowflake's financial condition, results of operations and business prospects. Defendants achieved this by making positive statements about the Company's business and demand for its products, while they knew, or at least recklessly disregarded, that the Company was experiencing material negative conditions that impaired its financial condition, results of operations and business prospects, and market price of its shares. Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Snowflake stock fell precipitously as the prior artificial inflation came out of Snowflake's stock price.

49.     As a result of their purchases of Snowflake stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

50.     As a direct result of the public revelations regarding the truth about the condition of Snowflake's business and the negative adverse factors that had been impacting Snowflake's business during the Class Period, the price of Snowflake's stock materially declined. This drop removed the inflation from Snowflake's stock price, causing real economic loss to investors who purchased the stock during the Class Period.

51.    The decline in Snowflake's stock price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Snowflake's stock price decline negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

**FRAUD-ON-THE-MARKET DOCTRINE**

52.    At all relevant times, the market for Snowflake's common stock was an efficient market for the following reasons, among others:

(a)    The Company's common stock met the requirements for public listing and was listed and actively traded on the NYSE, a highly efficient market;

(b)    As a regulated issuer, the Company filed periodic public reports with the SEC;

(c)    The Company regularly issued press releases which were carried by national news wires.  Each of these releases was publicly available and entered the public marketplace; and

(d)    A number of securities analysts regularly followed and analyzed the Company, and issued reports concerning the Company.

53.    As a result, the market for the Company's publicly traded common stock promptly digested current information with respect to Snowflake from all publicly available sources and reflected such information in the price of the Company's common stock.  Under these circumstances, all purchasers of the Company's publicly traded common stock during the Class Period suffered similar injury through their purchase of the publicly traded common stock of Snowflake at artificially inflated prices and a presumption of reliance applies.

**ADDITIONAL SCIENTER ALLEGATIONS**

54.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal

securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Snowflake, their control over, and/or receipt and/or modification of Snowflake's allegedly materially misleading misstatements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Snowflake, including daily consumption and revenue, and the financial impacts of tiered storage pricing, Iceberg Tables, and product efficiency gains, participated in the fraudulent scheme alleged herein.

55.     As alleged herein, Defendants admit that they "look at [consumption and revenue] on a daily basis". ¶25. Further, tiered storage pricing, Iceberg Tables, and the Microsoft Azure Cobalt 100 chip, are product developments that Defendants initiated, began testing, and/or rolled out during the Class Period. ¶¶36-37, 40, 42-43. Additionally, Defendants admitted that many of their large customers had informed them of their plans to adopt Iceberg Tables. ¶¶42, 46-47.

56.     Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

57.     Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of Snowflake, issued statements and press releases on behalf of Snowflake and had the opportunity to commit the fraud alleged herein. Defendants Slootman and Scarpelli, along with other Company insiders, sold over $400 million worth of Snowflake stock (of which Defendants Slootman and Scarpelli sold over $263 million and $28 million, respectively) during the Class Period. These sales were suspicious in both timing and amount and occurred in the weeks and months before the corrective information alleged herein was revealed to the market.

## NO SAFE HARBOR

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

1  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

59. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, or the forward-looking statement was authorized and/or approved by an executive officer of Snowflake who knew that those statements were false when made.

**FIRST CLAIM FOR RELIEF**
**For Violation of Section 10(b) of the Exchange Act**
**and Rule 10b-5 Against All Defendants**

60. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

61. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Snowflake publicly traded common stock during the Class Period.

63. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Snowflake's publicly traded common stock.

Plaintiff and the Class would not have purchased Snowflake common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

64. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Snowflake common stock during the Class Period.

**SECOND CLAIM FOR RELIEF**
**For Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

65. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Snowflake within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68. As set forth above, Snowflake and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Snowflake's and the Individual

Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: February 24, 2026

By: /s/ *Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice* to be filed)
Jason A. Uris (*pro hac vice* to be filed)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*juris@kaplanfox.com*

**THE PASKOWITZ LAW FIRM, P.C.**
Laurence D. Paskowitz
The Contour
97-45 Queens Blvd., Ste. 1202
Rego Park, NY 11374
Telephone: 212-685-0969
*lpaskowitz@pasklaw.com*

*Attorneys for Plaintiff Harsh Patel*

## **CERTIFICATION**

I, Harsh Patel, hereby certify as follows:

      1.     I have reviewed a complaint against Snowflake, Inc. ("Snowflake") and certain executives alleging violations of the securities laws and authorize the filing of a complaint.

      2.     I did not purchase the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

      3.     I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial if necessary.

      4.     My transactions in Snowflake common stock during the proposed class period are set forth in Schedule A, which is attached hereto.

      5.     I have not sought to serve as a representative party on behalf of a class or been appointed lead plaintiff in any action under the federal securities laws during the three-year period preceding the date of this Certification.

      6.     I will not accept any payment for serving as a representative party on behalf of a class beyond my pro-rata share of any recovery, except as ordered or approved by the court, including any award to a representative plaintiff of reasonable costs and expense directly related to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 17, 2026

_____
Harsh Patel

**Schedule A**

**<u>Harsh Patel Transactions in Snowflake, Inc.</u>**

| Security Description | CUSIP | Transaction | Date | Quantity | Price |
|---|---|---|---|---|---|
| Snowflake, Inc. | 833445109 | Sell | 2/22/2024 | (14.58) | $227.14 |
| Snowflake, Inc. | 833445109 | Buy | 2/22/2024 | 15.00 | $200.00 |